# 22-3210

# United States Court Of Appeals for the Second Circuit

———————————————————

JONATHAN CORBETT,
*Plaintiff-Appellant*

v.

KATHLEEN HOCHUL, *IN HER OFFICIAL CAPACITY AS CHIEF EXECUTIVE OF THE STATE OF NEW YORK*, LETITIA JAMES, *IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF NEW YORK,* ERIC ADAMS, *IN HIS OFFICIAL CAPACITY AS MAYOR OF THE CITY OF NEW YORK*, KEECHANT SEWELL, *IN HER OFFICIAL CAPACITY AS POLICE COMMISSIONER OF THE NEW YORK POLICE DEPARTMENT*, INSPECTOR HUGH BOGLE, *IN HIS OFFICIAL CAPACITY AS COMMANDING OFFICER OF THE NEW YORK POLICE DEPARTMENT, LICENSING DIVISION*, AND KEVIN BRUEN, *IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF THE NEW YORK STATE POLICE*
*Defendants-Appellees*

———————————————————

On Appeal from the United States District Court for the
Southern District of New York (Hon. Lorna G. Schofield)

———————————————————

**OPENING BRIEF OF PLAINTIFF-APPELLANT JONATHAN CORBETT**

———————————————————

JONATHAN CORBETT, ESQ.
**CORBETT RIGHTS, P.C.**
5551 Hollywood Blvd., Suite 1248
Los Angeles, CA 90028
Phone: (310) 684-3870
FAX: (310) 675-7080
E-mail: jon@corbettrights.com
*Attorney Proceeding* Pro Se

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................3

INTRODUCTION ..............................................................................................4

JURISDICTIONAL STATEMENT ....................................................................5

STATEMENT OF THE ISSUES.........................................................................5

STATEMENT OF THE CASE............................................................................6

SUMMARY OF THE ARGUMENT ..................................................................8

ARGUMENT .....................................................................................................10

   **I. Mandatory Militia Membership is Not a Historical Analog to Gun License Training Requirements Because Lawful Gun Ownership Has Never Been Connected to Militia Membership** ............................................................10

   **II. Appellant Had Standing in the District Court to Challenge the Training Requirements**.................................................................................................14

CONCLUSION .................................................................................................16

RULE 27(d)(2) CERTIFICATE ........................................................................17

CERTIFICATE OF SERVICE ..........................................................................18

## **TABLE OF AUTHORITIES**

### **Cases**

*In re: World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167 (2nd Cir. 2007)...............8

*New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. ___ (2022) 4, 9, 10

*Progressive Credit Union v. City of New York*, 889 F.3d 40 (2nd Cir. 2018)............8

### **Statutes**

28 U.S.C. § 1292 .................................................................................................5
28 U.S.C. § 1331 .................................................................................................5
N.Y. Penal Law § 400.00 ............................................................................ passim

## INTRODUCTION

There is no longer any doubt that the Second Amendment to the U.S. Constitution provides an individual right to bear arms, unconnected to membership in a "militia," that is enforceable against the states, applies outside of the home, and may not be denied to the ordinary, law-abiding citizen. *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. ___ (2022). In the wake of *Bruen*, instead of heeding the Supreme Court's command to change from a "may-issue" gun licensing regime – that, in practice, did not issue licenses to New York City residents absent special need greater than the ordinary citizens – to a "shall-issue" system, New York passed its Concealed Carry Improvement Act ("CCIA") designed to make it as time-consuming, expensive, and difficult as possible to obtain a gun license.

The appeal before the Court relates to the CCIA's training requirements. As codified in Subsection 19 to N.Y. Penal Law § 400.00, it requires an applicant to complete 18 hours of training: 16 hours of "in-person live curriculum" and 2 hours of "live-fire range training." This is the most onerous mandatory training requirement currently in effect in the country, it is far beyond that which is necessary to ensure gun owner safety, and it is supported by no historical analog and is, therefore, unconstitutional. Notwithstanding, the court below denied a motion for preliminary injunction on a challenge to the same by improperly finding

that a historical requirement of mandatory militia membership is analogous to the CCIA's training requirements. It is not, and the Court is asked to reverse.

## JURISDICTIONAL STATEMENT

This case was brought to the district court as a challenge under the United States Constitution, and thus federal question jurisdiction was proper in that court under 28 U.S.C. § 1331. This is an appeal of a denial of a motion for preliminary injunction entered on November 29th, 2022, with a timely notice of appeal filed December 28th, 2022. JA-214, JA-245. The Court has "jurisdiction of appeals from [i]nterlocutory orders of the district courts of the United States … refusing … injunctions" under 28 U.S.C. § 1292(a).

## STATEMENT OF THE ISSUES

Presented for the Court's review is the question of whether the training requirements mandated by New York's Concealed Carry Improvement Act ("CCIA") for applicants seeking a license to carry firearms is unconstitutional under the Second and Fourteenth Amendments to the U.S. Constitution.

## STATEMENT OF THE CASE

Plaintiff-Appellant Jonathan Corbett (hereafter, "Appellant") filed an application for a license to carry a concealed firearm with the New York City Police Department on April 14th, 2022. JA-005, ¶ 17. *Bruen* was decided on June 23rd, 2022, and New York passed the CCIA on July 1st, 2022. Plaintiff-Appellant filed suit against New York Governor (and public co-author and proponent of CCIA) Kathleen Hochul on July 11th, 2022, in the U.S. District Court for the Southern District of New York. JA-247. The case, assigned to U.S. District Judge Lorna G. Schofield, challenged under the First, Second, and Fourteenth Amendments to the U.S. Constitution three aspects of CCIA that would be applied to his then-pending (and still-pending) application for a gun license: a requirement to disclose social media accounts, a requirement to provide references, and a requirement to undergo the most extensive pre-licensure training required anywhere in the country. *Id*., JA-003-012.

A motion for a preliminary injunction was filed on August 22nd, 2022. JA-248 (Dist. Ct. D.E. #11). Gov. Hochul opposed, in part, on the grounds that she was an improper defendant. JA-249 (Dist. Ct. D.E. #15). To ensure that a proper defendant had been joined, Appellant filed his First Amended Complaint on September 13th, 2022, naming two additional state officials (collectively with Hochul, the "State Appellees") and three New York City officials responsible for

the enforcement of CCIA (the "City Appellees"). JA-003-012. After all parties had been served, the motion was renewed on September 28th, 2022. JA-013-029.

The State Appellees and City Appellees responded to the motion separately. JA-030-178, JA-179-201. The City Appellees argued, *inter alia*, that CCIA would not apply its social media requirement and references requirement to Plaintiff because his application was filed prior to the effective date of CCIA, and thus as to those requirements, Appellant lacked standing. JA-189-190. This argument was ultimately adopted by the district court (JA-236-247), and Appellant does not challenge this holding; the issues of the social media and references requirements are therefore not raised by this appeal.

The training requirement, however, binds all pending applicants regardless of the submission date of the application. JA-191. All Appellees argued that the training requirements are constitutional because, in sum, they are reasonable, they are similar to those of other jurisdictions, and they are similar to historical analogs which they enumerated. JA-067-069, JA-193-198. The City Appellees also argued that Appellant had no standing while his application was still pending because denial was a pre-requisite injury necessary under Article III. JA-190-192.

The court below assumed without deciding that Appellant had standing because "it seems likely that the plaintiff can show that his application is futile and

likely to be denied. It is sufficient to establish injury in fact and, therefore, standing." JA-238. However, as to the merits of Appellant's argument, it found that Appellees "have made a sufficient showing without any contrary evidence from plaintiff that the training requirement is consistent with the Nation's historical tradition of firearm regulation." JA-239. In particular, the district court was persuaded that because historically, militia membership was mandatory, and because militia membership required extensive training during which "the men were expected and did carry arms," the state may presently mandate extensive training for gun licensees. JA-239-241. The order did not address Appellees' arguments regarding reasonableness and similarity to existing laws.

## SUMMARY OF THE ARGUMENT

On a motion for a preliminary injunction, the district court must balance "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re: World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2nd Cir. 2007). The court below addressed only the first of these prongs (and expressly excluded the third and

fourth prongs from its calculus), apparently finding the "likelihood of success" prong to be dispositive. JA-235.

In cases challenging firearms regulations, the state bears the burden of proof as to demonstrating a historically analogous regulation such that the court is persuaded that the authors of the Second Amendment[1] must not have intended to preclude regulations of that type. *Bruen* at *10, JA-239. The regulation at issue here is an 18-hour training requirement, which is the most extensive mandatory training requirement set by law in any state in the country, currently or in the past. Appellees attempted to justify this by pointing to mandatory militia service requirements, noticing that such requirements include what amounts to state-mandated gun training and were required by all. The court below agreed.

However, mandatory militia training is simply not analogous. Firstly, such requirements applied only to a minority of those living within the states – women, those with disabilities, and others were excluded – and failure to comply did not result in disenfranchisement of gun rights. Second, the facts put forth by the government into the record do nothing to demonstrate the extent of firearms training within the militia. Third, the "firearm training" in the militia was that of how to kill people, which is distinct from CCIA's "firearm training" designed to

---

[1] Or the authors of the Fourteenth Amendment, since that is what applied the Second Amendment to the states. But the distinction matters not for our purposes.

*prevent* gun deaths. The argument that mandatory militia membership is analogous to CCIA's requirements is specious and fails to satisfy the government's burden to demonstrate likelihood of success on the merits.

## ARGUMENT

### I. *Mandatory Militia Membership is Not a Historical Analog to Gun License Training Requirements Because Lawful Gun Ownership Has Never Been Connected to Militia Membership*

"Whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." *Bruen* at *20 (*cleaned up*). "[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id*. at *21 (*emphasis in original*).

It is undisputed that the lawmakers who required mandatory militia membership in 18th and 19th century America were not attempting to address gun safety issues, but rather were attempting to create a defense force for the states (or the nation as a whole). Any argument by the government here that there is a historical analog between mandatory militia membership and gun license training

requirements rests on the proposition that, regardless of the *intent* of the same, mandatory militia membership *served the purpose* of ensuring that gun owners were educated enough about firearms and the law to be responsible owners, and imposed a comparable burden.

This argument fails for at least three reasons.

First, as the government concedes, mandatory militia membership requirements applied only to 1) able-bodied, 2) male, 3) citizens of the state, 4) within a certain age range. JA-068 ("every able-bodied male person, being a citizen of this state, … and who are of the age of sixteen, and under the age of forty-five years, shall … be enrolled…"), JA-197 ("men in the militia"). People who were disabled or otherwise not physically able to serve in the militia were not prohibited from carrying concealed weapons or required to partake in supplemental training. Neither were women, nor were those outside of the 30-year age range where service was expected, nor were those who lived in a state without being a citizen thereof. These "exceptions" entirely swallow the analogy, as more than half the population is female and a substantial percentage of the remaining male population would have been physically unfit to serve, a non-citizen, or of an excluded age. The vast majority of people in 18th and 19th century America were not required to endure any militia firearms training before exercising their right to bear arms. The record was also free of any evidence that failing to join the militia,

even if it was required, would result in the disenfranchisement of gun rights. A law not designed to ensure responsible gun ownership, which did not apply to the majority of the people, compliance with which was not a prerequisite to gun ownership, but may have been of some gun safety benefit, is simply not an analog to New York's requirement under the CCIA.

Second, the Court below found that "the overarching purpose [of mandatory militia membership laws] was firearms safety, even for the militia. They don't want you shooting yourself with the gun." JA-224. But the record is entirely devoid of support for this proposition. The State Appellees' brief simply argued that militia men were required to own guns, and training included some type of "drill[s] for up to 'six hours'". JA-068-069. The City Appellees' brief merely stated that militia men were "trained to arms." Neither the State Appellees nor the City Appellees went into any further detail. What portion of those "six hours" of "drill[ing]" was dedicated to firearms? Did this requirement apply to all militia men, or did some do more (*e.g.*, infantrymen) than others (*e.g.*, medics)? And what does being "trained to arms" mean? The Appellees did not present evidence that militia firearm training lasted hours, let alone was the "overarching purpose" of militia training, and it was their burden to do so.

Third, even if one neglects the small percentage of individuals that were required to be in the militia, and even if one assumes – despite the record being

silent – that most if not all in the militia received extensive firearms-related training, that training is certainly substantially different from the training that is mandated by the CCIA. The record is also devoid of any discussion on what these men were trained on, but a common understanding is that military firearms training primarily focuses on *how to kill people* with those firearms.

This is literally the opposite of the expressed intent of CCIA, which is to *prevent* gun deaths. CCIA training is set by law to include the following topics: "(i) general firearm safety; (ii) safe storage requirements and general secure storage best practices; (iii) state and federal gun laws; (iv) situational awareness; (v) conflict de-escalation; (vi) best practices when encountering law enforcement; (vii) the statutorily defined sensitive places in subdivision two of section 265.01-e of this chapter and the restrictions on possession on restricted places under section 265.01-d of this chapter; (viii) conflict management; (ix) use of deadly force; (x) suicide prevention; and (xi) the basic principles of marksmanship." N.Y. Penal Law § 400.00(19). To the extent that both militia membership laws and CCIA impose training requirements on the people, this training is wholly different (or, at the least, the government failed to demonstrate similarity) in purpose and curriculum, *i.e.,* it is non-analogous.

## II. *Appellant Had Standing in the District Court to Challenge the Training Requirements*

The court below assumed, without finding, that Appellant had sufficient Article III standing because he had filed an application, he had submitted an uncontroverted affidavit indicating that he had intent not to complete the training, and the law, under that circumstance, requires the licensing official to deny the application – in other words, that the application was futile. JA-238. The parties appear to agree that if futility is demonstrated, Article III standing exists. JA-053, JA-191. Appellant raises the issue here to reassure the Court of its jurisdiction.

Much of the City Appellees' argument was based on a hypothetical possibility that Appellant may have already completed sufficient training. JA-192. However, the only training having been completed by Appellant in the past occurred outside of the five-year window through which CCIA allows a licensing officer to look to find suitable past training. *Id*., JA-211 ("However, Plaintiff has not taken a training course in the last 5 years. Corbett Reply Aff., ¶ 3").

The court below was correct that it is a mandatory duty of the licensing official to ensure that the training requirement is fulfilled before a license may be issued, and that, on the facts in the record, the official reviewing Appellant's application must, by law, deny it. In light of the lengthy application processing

time (Appellant applied 11 months ago and is still waiting), holding otherwise would merely serve to allow New York to temporarily – but not insubstantially – insulate its law from judicial review. Appellant has an injury, he has standing, and the court below had jurisdiction.

## CONCLUSION

Militia membership and training requirements are simply not analogous to the pre-licensure training required by New York's CCIA. They were unconnected with gun ownership, they did not apply to the majority of the citizens, and the government failed to demonstrate that the firearms-related portion of militia training was at all similar in length, scope, or purpose as CCIA's requirements.

New York may not be required to point to a "historical twin," but here it has pointed to a historical impostor. Appellant has thus demonstrated a likelihood of success on the merits and the Court should reverse the order of the district court denying a preliminary injunction as to the training requirements of CCIA.

Dated: New York, New York
     March 14th, 2022

Respectfully submitted,

_____
Jonathan Corbett, Esq.
**CORBETT RIGHTS, P.C.**
*Attorney Proceeding* Pro Se
5551 Hollywood Blvd., Suite 1248
Los Angeles, CA 90028
Phone: (310) 684-3870
FAX: (310) 675-7080
E-mail: jon@corbettrights.com

## RULE 27(d)(2) CERTIFICATE

This brief complies with L.R. 27.1(a)(3) and Fed. R. App. P. Rule 27(d)(2) because it contains approximately 2,800 words.

Dated: New York, New York

    March 14th, 2022

Respectfully submitted,

_____
Jonathan Corbett, Esq.
**CORBETT RIGHTS, P.C.**
*Attorney Proceeding* Pro Se
5551 Hollywood Blvd., Suite 1248
Los Angeles, CA 90028
Phone: (310) 684-3870
FAX: (310) 675-7080
E-mail: jon@corbettrights.com

## **CERTIFICATE OF SERVICE**

I certify that this document was served on all appellees via the CM/ECF system on March 14th, 2022.

Dated: New York, New York     Respectfully submitted,

March 14th, 2022

_____
Jonathan Corbett, Esq.
**CORBETT RIGHTS, P.C.**
*Attorney Proceeding* Pro Se
5551 Hollywood Blvd., Suite 1248
Los Angeles, CA 90028
Phone: (310) 684-3870
FAX: (310) 675-7080
E-mail: jon@corbettrights.com