

**Office of the New York State Attorney General**

**Letitia James Attorney General**

October 14, 2025

Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for
 the Second Circuit
40 Foley Square
New York, NY 10007

    Re: *Corbett v. Hochul*, No. 22-3210

Dear Ms. Wolfe:

I submit this letter brief on behalf of the state defendants-appellees[1] in response to this Court's August 20, 2024, order (ECF No. 92). That order directed the parties to submit supplemental letter briefs addressing the effects of *Giambalvo v. Suffolk County*, No. 23-208, 2025 WL 2627368 (2d Cir. Sept. 12, 2025), and *United States v. Rahimi*, 602 U.S. 680 (2024), on

---

[1] The state defendants-appellees are Governor Kathy Hochul, in her official capacity; Attorney General Letitia James, in her official capacity; and State Police Superintendent Steven James, in his official capacity (who was automatically substituted as a defendant when he replaced the prior Superintendent).

the issues in this appeal of the district court's order denying plaintiff's motion for a preliminary injunction, no later than thirty days after the *Giambalvo* decision. The Court issued the supplemental briefing order after being notified by plaintiff Corbett that the district court had addressed plaintiff's standing to challenge the firearm training requirement at issue in this appeal (*see* Letter from Corbett to Court (Aug. 6, 2024), Dist. Ct. ECF No. 88))—as this Court had instructed the district court to do on remand (*see* Op. & Order (July 26, 2024), Dist. Ct. ECF No. 99).

As an initial matter, in its post-remand decision, the district court properly dismissed Corbett's claims against the state defendants for lack of standing. That is because, as explained in the district court's decision (*id.* at 7) and in the state defendants' original appellee brief in this Court (Br. for State Appellees at 31-33, ECF No. 48), the city police commissioner—not any state defendant—is responsible for deciding Corbett's firearm license application and ensuring that the required training is completed. Thus, Corbett's alleged injury is not traceable to any state defendant. And there is no basis to disturb that correct conclusion of the district court.

The state defendants nevertheless file this letter brief to explain that *Giambalvo* and *Rahimi* further confirm that the firearm training requirement at issue is constitutional.[2] *First*, in *Giambalvo*, this Court recently declined to preliminarily enjoin enforcement of the same firearm training requirement because that requirement is a presumptively constitutional part of a "shall issue" firearm licensing regime and the plaintiffs had failed to rebut that presumption. *See* 2025 WL 2627368, at *9-11. *Giambalvo* disposes of this appeal and requires affirmance of the district court's decision declining to preliminarily enjoin enforcement of the same requirement here. Just like the plaintiffs in *Giambalvo*, Corbett has failed to rebut the presumption of constitutionality that applies to the firearm training requirement.

*Second*, even if *Giambalvo*'s holding were not binding, the reasoning of that decision, and of the Supreme Court's recent decision in *Rahimi* and another recent decision of this Court in *Antonyuk v. James*, 120 F.4th 941 (2024), confirm that plaintiffs' challenge here fails, for multiple indepen-

---

[2] To the extent that the state defendants would otherwise no longer be proper parties because Corbett's claims against them were dismissed, the state defendants hereby intervene pursuant to 28 U.S.C. § 2403(b) to defend the constitutionality of the state firearm training requirement at issue, Penal Law § 400.00(1)(o)(iii), (19).

dent reasons. For one thing, even if the Court reached beyond the presumption of constitutionality to history and tradition (and it should not do so), *Giambalvo*, *Rahimi*, and *Antonyuk* demonstrate that Corbett errs in demanding a "historical twin" for the challenged training requirement. The case law requires only evidence that the challenged requirement is consistent with a broader historical principle of firearm regulation. And, here, the historical analogs that the defendants have cited make clear that the challenged training requirement is consistent with a deeply rooted historical principle of requiring training in the safe and effective use of arms for individuals who are likely to use them.

Moreover, the same recent decisions confirm that facial Second Amendment challenges like Corbett's cannot succeed unless the challenged law is unconstitutional in all applications. The challenged training requirement here plainly is not unconstitutional as applied to the many individuals seeking firearm licenses who have no prior firearm training or experience and could not safely utilize a firearm without such training.

# ARGUMENT

## *GIAMBALVO*, *RAHIMI*, AND *ANTONYUK* CONFIRM THE CONSTITUTIONALITY OF THE FIREARM TRAINING REQUIREMENT AT ISSUE IN THIS APPEAL

### A. This Court Already Upheld the Constitutionality of the Training Requirement in *Giambalvo*.

In *Giambalvo*, this Court rejected a Second Amendment challenge to several firearm regulations from New York's Concealed Carry Improvement Act (CCIA)—including the same firearm training requirement at issue in this case. In doing so, the Court affirmed the denial of a preliminary injunction against enforcement of that requirement. *See* 2025 WL 2627368, at *9-11. That holding in a published opinion governs here and disposes of Corbett's arguments.

This Court emphasized in *Giambalvo* that the Supreme Court had already found firearm training requirements to be a proper part of presumptively constitutional shall-issue firearm licensing regimes. *Id.* at *9. In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), for instance, "the Supreme Court went out of its way to clarify that 'nothing in our analysis should be interpreted to suggest the unconstitutionality of . . . 'shall-issue' licensing regimes,'" which "'often require applicants to . . . pass a firearms safety course.'" *Id.* (emphasis omitted)

(quoting *Bruen*, 597 U.S. at 13 n.9). Such regimes "are not constitutionally suspect because they 'are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens.'" *Id.* (quoting *Bruen*, 597 U.S. at 13 n.9); *see also id.* (quoting Justice Kavanaugh's *Bruen* concurrence, 597 U.S. at 79-80, underscoring that States may impose licensing requirements such as "'training in firearms handling and in laws regarding the use of force'" (emphasis omitted)). This Court then found that the plaintiffs had failed to rebut the presumptive validity of the firearm training requirement at issue here and declined to preliminarily enjoin its enforcement. *Id.* at *10.

The Court's holding in *Giambalvo* is binding in this case. *Giambalvo* determined that the presumptive constitutionality of the training requirement stood unrebutted based on a record materially identical to the record here. *See id.* And, just as in *Giambalvo*, Corbett's failure to persuasively rebut the presumptive constitutionality of that requirement "alone defeats [his] ability to show the requisite clear or substantial likelihood of success as to [his] constitutional challenge" for a preliminary injunction. *Id.* Indeed, *Giambalvo* emphasized that "a well-considered conclusion of law"

"in a published opinion" is "binding precedent," even when that conclusion is reached in a preliminary injunction posture. *See id.* at *6 n.4.

**B.     Even If *Giambalvo*'s Holding Did Not Govern, the Reasoning of *Rahimi*, *Antonyuk*, and *Giambalvo* Would Confirm the Constitutionality of the Training Requirement.**

Even if *Giambalvo*'s holding were not binding precedent (which it is), and this Court reached beyond the presumption of constitutionality to history and tradition (which it should not), the reasoning of *Giambalvo*, the Supreme Court's *Rahimi* decision, and this Court's *Antonyuk* decision would confirm that the district court properly declined to preliminarily enjoin enforcement of the firearm training requirement. That is so for at least two independent reasons.

**1.     Corbett errs in demanding a historical twin.**

Corbett argues that historical militia training requirements cannot be valid analogs for the modern firearm training requirement at issue here because the modern requirement is not identical to the historical requirements in the population covered and in the training's content and goals. *Rahimi*, *Antonyuk*, and *Giambalvo* all make clear that Corbett's argument is meritless.

7

In *Rahimi*, the Supreme Court explained in an 8-1 decision, authored by Chief Justice Roberts, that *Bruen*'s history-and-tradition Second Amendment standard was "not meant to suggest a law trapped in amber." 602 U.S. at 691. Courts must consider "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition"—but they should not demand a historical "dead ringer" or "twin." *Id.* at 692; *see id.* at 703-04 (Sotomayor, J., concurring); *id.* at 739 (Barrett, J., concurring). This principles-based analysis recognizes that contemporary regulations need not be limited by centuries-old policy needs, and relatedly that past legislatures may have had no occasion to "maximally exercise[] their power to regulate." *See id.* at 739-40 (Barrett, J., concurring).

Applying this analysis to Rahimi's case, the Court concluded that the government's cited historical evidence, including "going armed" laws that prohibited carrying arms in public to the terror of the people and surety laws that required individuals deemed dangerous to post a bond to possess a weapon, easily justified the challenged modern prohibition on firearm possession by individuals subject to domestic violence restraining orders, 18 U.S.C. 922(g)(8). Although the historical laws were far from historical "dead ringers" for the modern law, they remained sufficient analogs

8

because they were animated by a common principle of disarming dangerous individuals. *See id.* at 692-99.

This Court then applied and expanded upon *Rahimi*'s principles-based analysis in *Antonyuk*, similarly cautioning against an overly rigid interpretation of *Bruen*'s history-and-tradition standard.[3] For instance, this Court noted that "the absence of a distinctly similar historical regulation in the presented record, though undoubtedly relevant, can only prove so much." 120 F.4th at 969. That is because "the issues we face today are different than those faced in medieval England, the Founding Era, the Antebellum Era, and Reconstruction," *id.* at 970, and "[l]egislatures past and present have not generally legislated to their constitutional limits," *id.* at 969. "The paucity of eighteenth century gun control laws might have reflected a lack of political demand rather than constitutional limitations." *Id.* at 970 (quotation marks omitted).

---

[3] This Court issued its original *Antonyuk* opinion before *Rahimi*. *See* 89 F.4th 271 (2023). Upon review of the *Antonyuk* plaintiffs' petition for a writ of certiorari, the Supreme Court vacated and remanded for further consideration in light of *Rahimi*. *See* 144 S. Ct. 2709 (2024). This Court issued its now-governing opinion in *Antonyuk* several months later. *See* 120 F.4th 941. The Supreme Court then denied the *Antonyuk* plaintiffs' second petition for certiorari. *See* 145 S. Ct. 1900 (2025).

The Court applied this analysis to conclude that most of the CCIA firearm regulations challenged by the *Antonyuk* plaintiffs are consistent with the principles underlying the Second Amendment right, notwithstanding that there may not have been identical historical precursors from the Founding or Reconstruction era. *See* 120 F.4th 941.

That reasoning defeats Corbett's argument here. Corbett contends that historical militia training requirements, unlike the modern requirement at issue here, did not apply to the entire population and included training on military use of arms. But both the historical firearm training requirement (from a nation facing serious military threats) and the modern one (from a nation facing serious population-wide gun violence threats) reflect the common principle that States may require training in the safe and effective use of arms for those who are likely to use them—and that is sufficient to establish a valid historical analog.

As the Supreme Court explained in *Rahimi*, although historical analogs for the modern firearm law at issue there were "by no means identical" in the people they covered and the way they operated, the analogs did not need to be, where, as here, they shared a basic regulatory principle (i.e., disarming dangerous individuals). *See* 602 U.S. at 698. This Court

applied the same reasoning in *Antonyuk* and *Giambalvo*—finding historical laws applicable only to certain people to be appropriate analogs for modern laws that are applicable to all and that operate in different ways from the historical analogs. For example, in *Giambalvo,* this Court concluded that historical laws requiring individuals suspected of disloyalty to swear an in-person oath before carrying firearms are appropriate analogs for modern laws requiring everyone seeking to carry firearms to appear for an in-person interview. *See* 2025 WL 2627368, at *9. Similarly, in *Antonyuk*, 120 F.4th at 1031-32, this Court concluded that historical laws prohibiting firearm carrying by intoxicated people are appropriate analogs for modern laws prohibiting firearm carrying by everyone in places where intoxicated people are expected to be, i.e., bars and restaurants serving alcohol. *See* 120 F.4th at 1031-32.

Indeed, in *Antonyuk*, this Court confirmed that historical militia laws specifically are appropriate analogs for modern firearm laws that reach broader populations and have different content and goals. The Court held that historical laws excluding people with intellectual disabilities, mental illnesses, and alcohol addictions from militia service are appropriate historical analogs for the CCIA's modern prohibition on firearms for every-

one in locations providing behavioral health or chemical dependence care or services. *See* 120 F.4th at 1010-13. The Court so held because those laws share a common principle of prohibiting potentially dangerous use of firearms by vulnerable or impaired individuals—notwithstanding that the historical and modern laws did not affect "the exact same group in the very same way." *See id.* at 1012-13.

*Giambalvo*, in turn, specifically recognized that *Antonyuk* foreclosed arguments—like Corbett's arguments here—that historical militia laws are not appropriate historical analogs for the modern firearm training requirement at issue here, merely because the militia laws, for instance, "did not apply to the general population," and did not have precisely the same "substance or purpose" as the modern training requirement. 2025 WL 2627368, at *10 n.7 (quotation marks omitted) (citing *Antonyuk*, 120 F.4th at 1010-12). Accordingly, as *Giambalvo* made clear, Corbett's historical argument is inconsistent with governing precedent.

## 2. Corbett's facial challenge must fail because the training requirement is not unconstitutional in all its applications.

The discussions of facial challenges in *Rahimi*, *Antonyuk*, and *Giambalvo* indicate that Corbett's challenge to the firearm training requirement fails for another independent reason. Those cases make clear that a facial Second Amendment challenge to a firearm law—like Corbett's challenge—must fail when the plaintiff has not demonstrated that the challenged law is invalid in all its applications. *See Rahimi*, 602 U.S. at 693, 701; *Antonyuk*, 120 F.4th at 981-87, 999-1000; *Giambalvo*, 2025 WL 2627368, at *10. That is because, as the Supreme Court explained in *Rahimi*, "when legislation and the Constitution brush up against each other, a court's task is to seek harmony, not to manufacture conflict." 602 U.S. at 701 (quotation and alteration marks omitted); *see also Antonyuk*, 120 F.4th at 987 (facial challenges "disfavored" because they "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution" (quotation marks omitted)).

Applying those precedents here, Corbett's facial challenge must fail because the challenged training requirement has, at a minimum, some

constitutional applications. Plainly, training is a constitutional requirement at least for the many individuals seeking firearm licenses in New York who have no prior firearm training or experience and could not safely utilize a firearm without such training. *Cf. Rahimi*, 602 U.S. at 690 (recognizing historical tradition of "preventing individuals who threaten physical harm to others from misusing firearms"); *Antonyuk*, 120 F.4th at 983 (recognizing "widespread agreement" among both courts and scholars as to this historical tradition).

Moreover, this Court in *Giambalvo* also applied the facial-challenge standard to reject the plaintiffs' argument, indistinguishable from an argument that Corbett made below but did not pursue on appeal, that the training's cost violates the Second Amendment. *See* 2025 WL 2627368, at *10. As the Court explained, the plaintiffs had not come close to showing that "*all* training courses within New York State" are so "exorbitant[ly]" expensive as to violate the Constitution. *Id.* (quotation marks omitted).

## CONCLUSION

For all these reasons and those stated in defendants-appellees' original briefs, this Court should affirm the district court's order denying a preliminary injunction.

                              Respectfully submitted,

                              LETITIA JAMES
                               *Attorney General*
                               *State of New York*
                              Attorney for State Appellees

                            By:   */s/ Philip J. Levitz*
                                   PHILIP J. LEVITZ

                              BARBARA D. UNDERWOOD
                               *Solicitor General*
                              JUDITH N. VALE
                               *Deputy Solicitor General*
                              PHILIP J. LEVITZ
                               *Senior Assistant Solicitor General*